71 So.2d 503 (1954)
MIDDLETON et al.
v.
PLANTATION HOMES, Inc., et al.
Supreme Court of Florida. Division B.
March 9, 1954.
Rehearing Denied April 22, 1954.
*505 McCune, Hiaasen & Kelley, Fort Lauderdale, for appellants.
C. Shelby Dale, Fort Lauderdale, for Chauncey R. Clark.
Blackwell, Walker & Gray, Miami, for John H. Gerken, Jr.
HOBSON, Justice.
On October 21, 1948, plaintiff-appellants, Mr. and Mrs. Middleton, an elderly couple of limited means then residing in Washington, D.C., entered a contract with defendant-appellee Plantation Homes, Inc. (hereinafter "Plantation"), a Florida corporation, for the purchase of a dwelling house to be constructed in Broward County by Plantation for a total price of $11,768. The purchase price was payable in installments as construction progressed. The vendor corporation covenanted to furnish an abstract of title, and to make conveyance by warranty deed, free and clear of all liens and encumbrances.
The Middletons paid the installments as they became due. The transaction was closed on January 7, 1949, and Plantation on that date took a first mortgage from the Middletons in the amount of $2,000, which was the balance then remaining. A warranty deed bearing the closing date was executed but not recorded until April 9, 1949. No abstract of title was ever furnished.
After the transaction was closed, the Middletons made regular monthly payments to Plantation on the mortgage to and including the installment for August, 1949, when they were advised that Plantation no longer owned the mortgage but that future payments should be made to the First Federal Savings & Loan Association of Miami. Payments to that Association were, however, rejected, and the Middletons were advised that the First Federal was not the mortgagee.
The Middletons finally learned that Plantation was insolvent, and in April, 1951, were apprised, for the first time, that their property was encumbered by two underlying mortgages from which it had never been released by Plantation.
On August 10, 1951, the Middletons sued Plantation and defendant-appellees Gerken and Clark "under the Provisions of Chapter 87, F.S.A.", seeking a declaratory decree, and
"that a coercive decree be entered requiring and compelling the defendants, and each of them, especially the defendants Gerken and Clark, to procure and record at their expense duly executed releases of the above described land from the lien and effect of the above mortgage deeds * * *"
Defendant Plantation allowed the case to go by default, and a decree pro confesso was entered against it on December 28, 1951. Motions to dismiss and for summary decree were filed by Gerken and Clark. Plaintiffs also moved for a summary decree. Numerous lengthy affidavits and exhibits were filed.
The facts adduced were that during the critical period, Clark was a director and executive officer, and Gerken a director, of Plantation. The corporation was organized to develop a subdivision. Clark had previously engaged in successful building enterprises, and Gerken was an officer, director and stockholder in Maule Industries, Inc., a corporate supplier of building materials. The two had been business acquaintances before Plantation was formed. Gerken invested $5,000 in Plantation, lost it, and turned in his stock, never having received a dividend, salary, or any other compensation. He was one of six directors of Plantation, and attended only two meetings of the board during his entire service, which extended from February 3, 1948 to June 2, 1949. He had no contract with the Middletons, and knew nothing of the transaction *506 here in suit. Defendant-appellee Clark, during the operating life of Plantation, was primarily engaged in supervising construction and drafting plans. He attended no closings, including the Middleton closing. He states in his affidavit that he lost his life's savings in Plantation.
Plantation sustained large losses as the result of a flood in 1948, and this appears to have been at least the chief cause for its demise. Prospective financing commitments evaporated. Upon the present record, no responsibility for this condition can be fixed, nor can the money paid by the Middletons be traced, but it is uncontroverted that the sum paid was sufficient to have released the Middleton property from the lien of the underlying mortgages.
On March 9, 1949, Plantation entered a contract to sell a house to Clark and his wife for $9,412, the purchasers to assume a mortgage of $6,800, leaving due on closing a cash balance of $2,612. There is no competent evidence of the fair market value of this house, but its asking price, at least since December 17, 1948, had been $10,960. This house was conveyed to Mr. and Mrs. Clark on April 5, 1949 by warranty deed. No cash changed hands, but the sum to have been paid in cash was credited to the amount owed Clark by Plantation for back salary.
Maule Industries, Inc., the company with which defendant-appellee Gerken was connected, as aforesaid, had supplied building materials to Plantation, and in early 1949 was owed $16,000 by Plantation on this account. In lieu of enforcement of the lien rights arising from this situation, Maule Industries, on January 20, 1949, accepted from Plantation an assignment of thirteen second or third mortgages of a face value of $17,510.36. This transaction was handled for Maule Industries by its credit manager, without participation by Gerken. There is evidence that Gerken knew nothing about it, and no evidence to the contrary.
Upon this record, the Circuit Judge entered an order granting the motions of Gerken and Clark for summary judgment of dismissal and also purporting to grant their motions to dismiss. Appellants argue that the effect of this order is to establish all allegations in the complaint as true. But since the order entered was based upon consideration by the court of the numerous affidavits and items of documentary evidence which were filed, in addition to the pleadings, it is evident that the motions to dismiss were merged in the motions for summary judgment of dismissal, and we so hold. This being true, we look only to those allegations of the complaint which are admitted or proved.
It should first be observed that no fraud has been established on the part of Gerken or Clark, for it is elementary that proof of fraud must be clear and convincing, and the present record fails by a wide margin to make the requisite showing.
Another conclusion which may be reached at once is that Plantation is plainly liable to the Middletons on its covenant to convey an unencumbered title. But here again no fraud is involved. See Beatty v. Lucas, 112 Fla. 265, 150 So. 239, and Harrington v. Rutherford, 38 Fla. 321, 21 So. 283.
We have been shown no precedent for the kind of "coercive decree" here demanded, and while we shall not now decide whether the coercive relief available under F.S.A. Section 87.01 is limited to previously established equitable remedies, we hold that the extension sought by appellants is unwarranted. Actually, the primary thing sought to be coerced is the payment of sums necessary to satisfy the liens of the underlying mortgages, and the same result can be accomplished under a money judgment or decree, which the prayer as a whole is broad enough to encompass, provided liability can be established in the amount required. Such liability exists on the part of Plantation. Does it reach Gerken and Clark, or either of them? For appellants contend that a decree against Plantation would be worthless (although the exact state of its insolvency is not shown by the record) and that for real relief the Middletons must look to the appellee directors.
*507 Appellants would remove the insulation of the corporate entity by reference to the "trust fund doctrine," which, it is contended, operates in this case to impose individual liability to creditors upon the corporation's directors. The "trust fund doctrine" was long held inapplicable in this state, but was finally adopted with the enactment of Section 43, Chapter 10096, Acts of 1925, which is the predecessor of F.S.A. Section 612.45, in effect when this litigation arose. See Gray v. Standard Dredging Company, 111 Fla. 149, 149 So. 733. This statute is applicable to corporations organized under the 1925 Act, as Plantation was. It was derived from the Stock Corporation Law of New York, Consol.Laws 1909, c. 59, and brought into Florida law the gloss placed upon it by the highest court of New York up to the time of its adoption here. Denmark v. Ridgell Furniture Co., 117 Fla. 244, 157 So. 489. Section 612.45 prohibits and avoids intentionally preferential transfers by actually or imminently insolvent corporations, and the words by which it imposes personal liability are as follows:
"The directors or officers of a corporation who shall violate or be concerned in violating any provision of this section shall be personally liable to the creditors and stockholders of the corporation of which they shall be directors or officers to the full extent of any loss such creditors and stockholders may respectively sustain by such violation."
The transactions complained of must be examined in the light of this section.
We hold that the transfer of mortgages to Maule Industries above described was not a violation of Section 612.45 for which appellants can recover on the present record. There is no provable loss to appellants by virtue of this transfer, since there is no showing that enforcement of Maule's lien rights would have left the Middletons in any better case than the assignment of the mortgages. And the measure of recovery by the terms of the statute is limited to the extent of the loss sustained by reason of the transfer complained of. Doehler v. Real Estate Board, 150 Misc. 733, 270 N.Y.S. 386. But a point which is still more significant is that a mere exchange of one valid security for another is not generally considered a preferential transfer, In re North Babylon Estates, Inc., 2 Cir., 30 F.2d 372, and we hold that the transaction here under consideration did not constitute a transfer within the prohibition of the statute. Nor are there general grounds upon which liability can attach to Gerken, as appellants suggest. Gerken contends that directors may be held personally liable to creditors only for misfeasance, while appellants assert that nonfeasance will also result in personal liability. Both rely in part upon Skinner v. Hulsey, 103 Fla. 713, 138 So. 769, where many general principles are stated and discussed. But this question should not be resolved upon theory so remote from the facts of the case before us. Not only has no fraud or mismanagement been proved, but so far as appears water damage resulting from an act of God was the principal cause of Plantation's insolvency, as we have seen, and there is no reason to believe, upon this record, that had Gerken's participation been more active and had he exerted the "full control" authorized by F.S.A. Section 612.29, the corporation would have preserved its integrity to the benefit of appellants.
The situation of appellee Clark, however, differs from that of Gerken. During the period of time with which we are concerned, Clark, as an unsecured creditor in the amount of his back salary claim, received property from the corporation in a transaction which resulted in an unlawful preference within the plain terms of F.S.A. Section 612.45, thus turning to his own advantage an asset of the corporation which could have been used to satisfy the liens of the underlying mortgages upon the Middleton property. The amount of this preference is the market value of the property transferred as of the time of the transfer, less the amount of liens to which the Clark transfer was subject. The present record is in unsatisfactory condition as to market value of the Clark property, which must be determined upon remand. *508 The amount of the resultant sum to which the Middletons are entitled depends in turn upon the amount of the Middletons' pecuniary loss, which is the proportional amount of the liens of the underlying mortgages with which their particular property was impressed when they received title, with interest, and with costs incident to releasing their property from these mortgages. Of this figure, too, the record appears to be innocent, and upon remand it must be determined by the trial court. Thus Clark is personally liable to appellants to the full extent of their pecuniary loss only if the preference he received is of greater value than the amount of their loss, but if their loss is in an amount larger than the value of the Clark preference, Clark is liable only for the value of the preference.
The equities of this case are so strong that in justice and fairness appellants must be accorded an opportunity to offer further proof in conformity with this opinion, and it is so ordered.
Affirmed in part and reversed in part.
THOMAS, Acting C.J., DREW, J., and HOLT, Associate Justice, concur.