366 So.2d 60 (1978)
Julian C. HEADLEY, II, Phillip A. Poole, Lillian H. Poole, James D. Hartsfield and M.D. Lamb, Jr., Appellants,
v.
Stanley L. PELHAM, Appellee.
No. HH-216.
District Court of Appeal of Florida, First District.
December 13, 1978.
*61 James P. Judkins, of Davis & Judkins, Tallahassee, for appellants.
Gene D. Brown, of Brown & Hart, Tallahassee, for appellee.
McCORD, Chief Judge.
This appeal is from a final judgment in foreclosure finding that the lien of appellee on which he sought foreclosure against certain property was superior to a judgment lien of appellants. We affirm.
On July 19, 1972, appellee Stanley Pelham loaned the sum of $20,000 to Pelham Enterprises, Inc., a corporation founded by his brother, Bruce, the loan being evidenced by a cancelled check in the amount of $20,000. It was to be repaid with interest at the rate of 8%. Appellee had no interest in Pelham Enterprises at that time. Thereafter, Pelham Enterprises merged with Heritage Group, Inc., a corporation in which appellee's brother Bruce owned 49% of the stock, and Heritage assumed the obligations of Pelham Enterprises. Subsequently, Woodrun Properties, Inc., became a subsidiary of Heritage with Heritage owning 90% of the Woodrun stock.
Appellee's $20,000 loan was originally secured by a second mortgage on property owned by Pelham Enterprises located on Hartsfield Road. When that property was sold, the security was changed to a second mortgage on other property located on Belmont Road. The loan was being repaid by Pelham Enterprises in periodic installments and with the merger, Heritage continued the payments. Later, the property on Belmont Road was sold, and appellee gave up his security interest in that property in *62 exchange for assignment of a contract for deed previously given by Woodrun to Mr. and Mrs. Dugan covering the property which is the subject matter of this suit.[1] At this time, appellee owned 1% of the stock of Heritage and 5% of the stock of Woodrun.
In the latter part of 1975, the Dugans decided that they desired a note and mortgage in lieu of their contract for deed and were informed that the contract for deed had been assigned to appellee. Appellee agreed to the change, and a promissory note and mortgage from the Dugans in favor of appellee were executed and delivered on January 23, 1976.[2] On January 26, 1976, the escrow agent appointed at the time of the execution of the contract for deed delivered Woodrun's deed to the Dugans and the Dugans' mortgage to appellee was recorded on January 29, 1976.
At the time when Woodrun became a subsidiary of Heritage, it owned property it had purchased from Mrs. L.K. Edwards which was encumbered by a first mortgage to Mrs. Edwards securing a note in the approximate amount of $1,000,000. Appellants held a second mortgage on that property securing a note of approximately $600,000. On April 1, 1975, Woodrun defaulted on the Edwards note and she foreclosed. On December 15, 1975, Woodrun defaulted on appellants' note, and they then cross-claimed against Woodrun in Edwards' foreclosure action. Final judgment was entered in favor of appellants against Woodrun in the amount of $564,770.56 plus interest and attorney's fees on March 16, 1976, and was recorded on that date. Appellants' second mortgage lien against the Woodrun property was extinguished by Edwards' foreclosure of the first mortgage.
Reverting back to the appellee-Dugan transaction, the Dugans on May 24, 1976, recorded the warranty deed which had been delivered to them on January 26, 1976. Subsequently, the Dugans defaulted on their note to appellee, and appellee instituted this foreclosure action on the property involved in that transaction. Appellants were made parties to this action because of their judgment, and they counterclaimed against appellee alleging that the lien of their judgment against Woodrun was superior to appellee's mortgage lien; that appellants' claim to the subject property should be declared superior to appellee's claim. The trial court ruled against that contention and entered final judgment in favor of appellee. This appeal was taken from that ruling.
Appellants contend that appellee cannot defeat the lien of appellant's judgment because any interest appellee received in the property from Woodrun is in violation of § 608.55, Florida Statutes (1973). The pertinent provisions of that statute cited by appellants are as follows:
"No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash.
* * * * * *
Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders.
* * * * * *
Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void except as herein before provided...."
Appellants argue that at the time Woodrun transferred its interest in the Dugan contract to appellee, Woodrun was heavily indebted, insolvent and unable to pay its debts; that under the above statute the *63 transfer by Woodrun of its interest in the Dugan contract to appellee, one of its stockholders, was void, and thus appellants' judgment is superior to appellee's mortgage which was obtained as a result of Woodrun's transfer to appellee of its interest in the contract for deed. In response, appellee points out and the trial court apparently found that there was no evidence that at the time of the transfer Woodrun had refused to pay its obligations when due or that the transfer was payment for a debt for which the consideration therefor was less than the full value of the property paid in cash. The proof required under the above statute is something more than a showing that the corporation had unpaid debts. See Venice East, Inc. v. Manno, 186 So.2d 71 (Fla. 2 DCA 1966), where our sister court of the Second District, holding § 608.55 afforded no relief to plaintiffs under the facts of that case, stated:
"There is sufficient evidence in the record to show that plaintiffs had not paid all its obligations when due and had postponed payment on several bills. There was no showing, however, that plaintiffs had absolutely refused to pay these debts. `Refused' and `failed' are not necessarily synonymous. We concede that there might be instances where repeated postponement would actually amount to refusal, but we do not feel this to be the case here ... It has been held that where a corporation may be in straitened financial circumstances and have difficulty meeting its obligations, it has not necessarily reached the extreme position of refusing to pay within the meaning of the statute [citations omitted]. In the instant case there seems to be no doubt that at the time the conveyances were made to the defendants, plaintiff corporations were in straitened financial circumstances, but we do not feel that they had refused to pay their obligations within the meaning of § 608.55, Fla. Stat., F.S.A., and thus plaintiffs are afforded no relief under the statute."
Appellants further contend that the conveyance by Woodrun of security to appellee for appellee's original $20,000 loan to Pelham Enterprises, Inc., for which Woodrun assumed responsibility was a fraudulent conveyance barred by § 726.01, Florida Statutes. That statute voids transfers of property by a debtor with intent to hinder or frustrate a creditor from collecting his debt. The burden is upon one alleging fraud to prove it, the presumption being against the existence of fraud. Scott v. Dansby, 334 So.2d 331 (Fla. 1 DCA 1976). Such proof must be by clear and convincing evidence. Middleton v. Plantation Homes, 71 So.2d 503 (Fla. 1954). Whether fraud is present in a particular transaction is to be determined by the particular facts surrounding the conveyance. Stelle v. Dennis, 104 Fla. 384, 140 So. 194 (1932). The trial judge, in considering all of the circumstances surrounding the transactions in this case, determined that fraud did not exist. We agree. Appellee had originally loaned Pelham Enterprises, Inc. (a corporation in which he had no interest at the time) the sum of $20,000. That loan was first secured by a second mortgage on certain property owned by Pelham Enterprises. As previously outlined, the security for this debt was subsequently changed with appellee's consent in order that Pelham Enterprises, Inc., and other corporations allied with it could sell the property covered by the security. There is nothing in the evidence to show appellee was placed in any better financial position by the changes in his security or that he was given any preferential treatment.
As a final point, appellants assert that their judgment lien against Woodrun creates in them a superior lien on the subject property. There is a fallacy in appellants' contention, however. Appellants' judgment is not against the Dugans but is against Woodrun. At the time of the entry of their judgment on March 16, 1976, title to the subject property was not in Woodrun but was vested in the Dugans. Appellants stipulated that the deed was delivered to the Dugans on January 26, 1976. Title, of course, passed upon transfer of the deed, and appellants have not attacked that deed. Thus, appellants' judgment lien has not attached *64 to the subject property. Appellants had constructive notice of the Dugans' interest in this property by virtue of the contract for deed which had been executed and recorded on August 14, 1974, and the Dugans' subsequent mortgage of the property to appellee (containing full covenants of warranty) which was recorded on January 29, 1976.
AFFIRMED.
BOYER, J., and McLANE, RALPH M., Associate Judge, concur.
NOTES
[1] The contract for deed had been executed and recorded on August 14, 1974.
[2] The mortgage was inadvertently dated January 23, 1975, through mistake as the result of the mortgage having been prepared in 1975 and dated 1975 but not having actually been executed until 1976.