UNITED STATES of America

v.

Anthony ROMANO; Josephine Romano, individually and Josephine Romano, as Trustee; Amerifirst Bank, a Federal Savings Bank; Golden Gate Investors, a California Limited Partnership; Inovonics, Inc.; Anthony Mario Romano; VNA Respite Care, Inc.; and Ernest T. Baumeister.

No. 87–0841–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 9, 1989.

**1332**

David N. Geier, Marika Lancaster, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla., for the U.S.

H. Richard Bates, Anderson & Rush, Orlando, Fla., for Amerifirst Bank, a Federal Sav. Bank.

Bruce Cornelius, Graves, Allen, Cornelius & Celestre, Oakland, Cal., Arthur B. Friedman, Friedman, Friedman & Levin, Longwood, Fla., for Golden Gate Investors.

Stephen M. Stone, Orlando, Fla., for Inovonics, Inc.

Leo P. Rock, Gray, Harris & Robinson, P.A., Orlando, Fla., for VNA Respite Care, Inc.

Milton E. Grusmark, Miami, Fla., for Anthony and Joseph Romano and Anthony Mario Romano.

Scott L. Sterling, Orlando, Fla., for Anthony Mario Romano.

Frank C. Whigham, Stenstrom, McIntosh, Julian, Colbert, Whigham & Simmons, P.A., Sanford, Fla., for Ernest T. Baumeister.

## ORDER

G. KENDALL SHARP, District Judge:

This case was tried on October 10, 1989, without a jury. Based on the facts agreed to by the parties in their joint-pretrial stipulation, the testimony, and the evidence admitted at trial, this court enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## I. FINDINGS OF FACT

The United States of America brought this civil action under 26 U.S.C. §§ 7401–7403 (1988) against Anthony (Tony) Romano and Josephine Romano to reduce their outstanding federal income tax liabilities to judgment. The government also brought this action to foreclose the federal tax liens on the Romanos' property, both real and personal, through the sale of certain real property that their nineteen-year-old son, Anthony Mario Romano, presently holds. The government claims Tony and Josephine Romano have been the true owners of the subject real property since its acquisition and they have conveyed the real property with the actual intent to delay, hinder, and defraud their creditors. The government, as a creditor, seeks to set the conveyance aside.[1]

The real property in question (Spring Valley property) is described as LOT 14, BLOCK B, SPRING VALLEY FARMS, SECTION 10, according to the Plat thereof as recorded in Plat Book 16, page 54, of the Public Records of Seminole County, Florida. It is a house and lot located at 118

---

1. Apart from Tony, Josephine, and Anthony Mario Romano, the other defendants were joined in this action because they are persons or entities who claim or may claim an interest in the real and personal property that is the subject of this lawsuit. As stated in the joint-pretrial stipulation, the following judgments against

Tony Romano have been recorded in the Official Record Books of Seminole County, Florida: Golden Gate Investors, as holder, for $53,589.22, recorded August 31, 1982, in book 1417, page 679; and Inovonics, Inc., as holder, for $7,248.57, recorded October 18, 1982, in book 1417, page 1332.

Hamlin Terrace Lane, Altamonte Springs, Florida.

The Romanos maintain that Anthony Mario Romano is the legal and equitable owner of the Spring Valley property. They claim that in 1973 Tony Romano's father gave him $60,000.00 in cash to purchase property to safeguard the future interests of his grandson, Anthony Mario Romano. The grandfather did not think Tony Romano would further his grandson's well-being, because Tony Romano was a compulsive gambler. The Romanos claim that shortly after receiving the $60,000.00, Tony Romano bought property in Contra Costa County, California (California property). Allegedly, the grandfather wanted Anthony Mario Romano to become the fee simple owner of that property when he reached the age of majority. Anthony Mario Romano was approximately three years old when the California property was purchased.

Despite the grandfather's gift and intent, title to the California property was held under a grant deed by "Anthony Romano and Josephine Romano, his wife, as joint tenants." They held the property in that capacity from the time the property was acquired on May 2, 1973, until the time it was sold on June 26, 1980. Tony Romano could not explain why he and his spouse were not classified as the trustees for Anthony Mario Romano on the deed to the California property.

After selling the California property for $253,000.00, Tony and Josephine Romano located the Spring Valley property. On July 7, 1980, the property was acquired by warranty deed in the name of Jerry S. Luxenberg, trustee. The purchase price was $129,900.00, and the property was subject to a mortgage in favor of the predecessor in interest of Amerifirst Bank.

Mr. Luxenberg is the Romanos' attorney and friend. To the best of his knowledge, a written trust agreement was never drafted. When he held the title, he was not responsible for the taxes, mortgage, upkeep, or any other aspect of the Spring Valley property. Mr. Luxenberg considered himself merely a "drop-off point" for the proceeds from the sale of the California property; he disposed of the money per Tony Romano's instructions.

On February 6, 1981, Florida Homecrafters, Inc., began a legal action against Tony Romano, Josephine Romano, and Jerry S. Luxenberg, as trustee, in the circuit court of Seminole County, Florida. Florida Homecrafters brought the suit to foreclose a mechanics lien on the Spring Valley property and, as an alternative cause of action, to impose and foreclose an equitable lien on the property. On March 16, 1983, the Romanos, Mr. Luxenberg, and Florida Homecrafters filed a joint stipulation to resolve a discovery dispute in the lawsuit. According to the first paragraph of the document, Tony and Josephine Romano were identified as "the beneficial owners" of the Spring Valley property. The government questioned James M. Campbell, defendants' attorney in the circuit-court suit and a signatory of the joint stipulation. He testified that the first paragraph of the stipulation was erroneous. it should have read that the Romanos were the "guardians," not the beneficial owners, of the property.

On June 10, 1985, Mr. Luxenberg conveyed the property by a quit-claim deed to Josephine Romano, as trustee, in accordance with Tony and Josephine Romano's directive. Josephine Romano testified that she did not remember any papers that made her the trustee of the property on her son's behalf. The deeds held by Mr. Luxenberg and Josephine Romano, as trustees, do not mention the beneficiary, the nature, or the purposes of the purported trust. On July 1, 1988, Josephine Romano transferred title to the Spring Valley property to Anthony Mario Romano by quit-claim deed.

At trial the Romanos did not submit a legal instrument verifying either the grandfather's gift or his intent. Instead, they

relied on testimony to substantiate their claims. Anthony Mario Romano stated that he thought he owned the California and Spring Valley properties. Josephine Romano and Graham Deservine, a Federal Bureau of Investigation agent and family friend, testified that Anthony Mario Romano owned both properties. Mr. Deservine also asserted that the grandfather intended the $60,000.00 to be used for his grandson's welfare. Tony Romano stated that his son owned the properties. And, Mr. Luxenberg testified that Tony and Josephine Romano wanted him to hold the Spring Valley property for the benefit of Anthony Mario Romano.

Since the Spring Valley property was purchased, the Romanos have continuously occupied it as their residence, and Tony Romano has always been the source of the mortgage payments for the property. Each month he pays his son $560.00 in rent, which the son uses for the monthly mortgage payment of an equal amount. Tony Romano also pays the water and electric bills for the house.

On the subject of rental payments, the government certified Mr. Roger V. Phillips, president of Atwood–Phillips, Inc., a property management company in Winter Park, Florida, as an expert in Orlando area rental values. After examining the Spring Valley Property, Mr. Phillips judged the present fair market rental value of the property to be $2,500.00 per month. He testified that the methods he used to evaluate the house are commonly employed and are "very accurate." Mr. Phillips stated that the Romanos' monthly rental payment is "five times too low" and would have been the approximate fair market rental value of the Spring Valley property in 1976.

Before bringing this action, the government made tax assessments against Tony and Josephine Romano, both jointly and severally, for the years 1965, 1968, 1980, 1981, and 1982. Their tax liabilities for 1965 and 1968 were the subject of a proceeding in the United States Tax Court. The government gave Tony and Josephine Romano notice of assessment and demand for payment for their 1965 and 1968 tax liabilities on February 9, 1981. Notices of assessment for the 1980, 1981, and 1982 tax deficiencies were given on December 26, 1983, January 2, 1984, and August 15, 1983. The government duly and properly filed and refiled (where required) the federal tax liens with the Clerk of the Court, Seminole County, Florida. As of October 2, 1989, the tax liabilities of Tony and Josephine Romano totaled $1,183,960.48 plus statutory additions.[2]

Owing to the Romanos' outstanding tax liabilites, Pace McNealy, an Internal Revenue Service officer, met with Tony Romano in April 1986. At that meeting, Mr. McNealy and Tony Romano discussed selling the Spring Valley property; Tony Romano wanted to put the earnings from the sale toward his tax debt. Mr. McNealy testified that Tony Romano handed him a signed collection information statement, which detailed Tony Romano's assets and liabilities. In section four of the statement, Tony Romano had listed the Spring Valley property as an asset with an estimated value of $220,000.00. Tony Romano also handed Mr. McNealy a signed and notarized real estate listing and ownership affidavit. Mr. McNealy did not request the document and was "somewhat surprised" to receive it. The document gave Mr. McNealy the impression that Tony Romano had an interest in the Spring Valley property and that the property was an asset he was applying toward his tax liabilities. When questioned by the government about the document, Tony Romano responded that he was going to ask his son to sell the property and loan him $100,000.00 to use toward his unpaid tax obligations. Antho-

---

**2.** Robert Brockway, an Internal Revenue Service officer, stated that the Romanos' tax debt, as of October 2, 1989, was $1,118,745.99, and that the balance on their nonmaster file transcript, a manually kept record of their taxes, was $65,214.49. The total owed by the Romanos is reached by adding the two figures together.

ny Mario Romano was about sixteen years old at the time.

As a result of Mr. McNealy's visit, Tony and Josephine Romano voluntarily executed tax collection waivers with respect to their federal income tax liability for 1968, the civil fraud penalty of Tony Romano for the same year, and the federal income tax liability of Tony Romano for 1965. These waivers extended the statutory period for collecting the tax deficiencies by levy or court proceeding to December 31, 1988.

During the trial, the Romanos did not contest the merits of the various federal income tax assessments and conceded that the tax assessments against them were correct and valid. They invoked the statute of limitations, however, to bar the government from enforcing any tax liens against them.

## II. CONCLUSIONS OF LAW

This court has jurisdiction over the parties and the subject matter based on 28 U.S.C. §§ 1340, 1345 (1988). This case raises two issues: whether the conveyance of the Spring Valley property was fraudulent and whether the statute of limitations prevents the government from enforcing any tax liens against the Romanos.

### A. Issue One: Whether the Conveyance was Fraudulent

 " 'To constitute a fraudulent conveyance, there must be a creditor to be defrauded, a debtor intending fraud, and a conveyance of property which is applicable by law to the payment of the debt due.' " *United States v. Fernon*, 640 F.2d 609, 613 (5th Cir. Unit B Mar.1981) (quoting *Bay*

*View Estates Corp. v. Southerland*, 114 Fla. 635, 650, 154 So. 894, 900 (Div.A 1934)). Clearly, the government is a creditor for the purposes of collecting the Romanos' tax liabilities. Taxes are considered due and owing on the filing date of the tax return and failure to pay constitutes a liability. *United States v. Ressler*, 433 F.Supp. 459, 463 (S.D.Fla.1977); 26 U.S.C. §§ 6072, 6151 (1988). The questions that remain to be answered, then, are whether the Romanos intentionally placed the Spring Valley property beyond the reach of their creditors and whether that property is subject to the payment of the Romanos' tax debt.

To resolve whether the Romanos acted fraudulently, this court must apply Florida law to the particular facts surrounding the various transactions. *Commissioner v. Stern*, 357 U.S. 39, 45, 78 S.Ct. 1047, 1051, 2 L.Ed.2d 1126 (1958); *Headley v. Pelham*, 366 So.2d 60, 63 (Fla.Dist.Ct.App.1978). In Florida, the Uniform Fraudulent Transfer Act (UFTA) governs fraudulent conveyances. Fla.Stat. §§ 726.101–.201 (1987). The UFTA was adopted in 1987 and does not displace the principles of law and equity that were developed under previous statutes and case law.[3] *Id.* § 726.111. These principles have been preserved as supplementary provisions to the UFTA. *Id.*

The UFTA lists several indicia, or badges of fraud, to assist this court in determining whether the Romanos actually intended to hinder, delay, or defraud any of their creditors. *Id.* § 726.105(2)(a)–(k). Although each badge of fraud by itself may be insufficient to establish fraud per se, when viewed together they give this court a proper basis on which to make that inference. *Archer v. Commissioner*, 227 F.2d 270, 274 (5th Cir.1955) (fraud determina-

---

**3.** When the conveyance from James S. Luxenberg to Josephine Romano took place on June 10, 1985, the relevant law was Fla.Stat. § 726.01, *repealed by* Uniform Fraudulent Transfer Act of 1987, ch. 87–79, § 13, 1987 Fla.Laws 289. Florida had adopted the UFTA between the time .Josephine Romano received title and the time when she transferred it to Anthony Mario Ro-

mano on July 1, 1988. According to Fla.Stat. § 11.2425 (1987), a general saving clause, "[t]he repeal of any statute by the adoption and enactment of Florida Statutes 1987, by s. 11.2421, as amended, shall not affect any right accrued before such repeal or any civil remedy where a suit is pending."

tions are findings of fact); *Banner Constr. Corp. v. Arnold,* 128 So.2d 893, 896 (Fla. Dist.Ct.App.1961). Three badges of fraud are worn by the Romanos.[4]

### 1. The First Badge of Fraud: Dominion and Control.

Josephine and Tony Romano have lived on the Spring Valley property and have treated it as their residence since its acquisition in July 1980. The joint stipulation in the circuit-court action with Florida Home-crafters, dated March 10, 1983, stated that Tony and Josephine Romano were the beneficial owners of the property. When the stipulation was filed, Mr. Luxenberg held title to the property.

In April 1986 when Josephine Romano held title, Tony Romano willingly discussed selling the Spring Valley property with Mr. McNealy in order to apply the revenue toward his outstanding tax liabilities. Tony Romano handed Mr. McNealy a sworn affidavit to that effect. Tony Romano also listed the property as one of his assets in the collection information statement he gave Mr. McNealy.

Equally important, the Romanos have received a greater value from the Spring Valley property than their monthly rental payments to their son, the present title holder, should provide. The fair market rental value of the property is $2,500.00 per month; the Romanos pay Anthony Mario Romano $560.00, the exact amount of the monthly mortgage payments. As such, the rental payments are nothing but masqueraded mortgage payments. Tony Romano further admitted that he pays the water and electric bills for the Spring Valley property.

In their defense, the Romanos offered testimony from themselves, family, and friends to show that Anthony Mario Romano was the true owner of the Spring Valley property by virtue of his grandfather's gift of $60,000.00. They did not provide any independent source of legal evidence, for example, a trust agreement, to support their position. In addition, the Romanos did not introduce a legal instrument to prove that the grandfather had ever given Tony Romano the $60,000.00 cash gift or that he had ever intended the money to be used for Anthony Mario Romano's benefit. In short, the Romanos' self-serving testimony was inadequate to rebut the evidence of fraud against them. *Archer,* 227 F.2d at 273 ("[T]he court is not bound to accept testimony at face value even when it is uncontroverted if it is improbable, unreasonable or questionable."). Based on the evidence introduced by the government, Tony and Josephine Romano retained absolute dominion and control of the Spring Valley property from the time of its acquisition.

### 2. The Second Badge of Fraud: Transfer to Insiders.

The Spring Valley property was purchased with the revenue gained from the sale of the California property. Although the Romanos contended that Anthony Mario Romano owned the California property, the deed to the property states that Tony and Josephine Romano held the property as joint tenants. Anthony Mario Romano is not mentioned on the document. Before Anthony Mario Romano took title to the Spring Valley property, it was held by Mr. Luxenberg, the Romanos' friend and attorney. Mr. Luxenberg received title to the property at the Romanos' request. When Mr. Luxenberg held the title, no trust agreement existed to indicate that he was holding the property for Anthony Mario Romano. After Mr. Luxenberg transferred the property to Josephine Romano, in accordance with the Romanos' instructions, no trust agreement was drafted to demonstrate that she was holding title for her son. Moreover, neither the deed held by Mr. Luxenberg nor the one held by Josephine Romano alludes to Anthony Mario Romano as the beneficiary of the Spring Valley property.

Under Florida law, when a grantee of property is named as a trustee in a

---

**4.** These same three badges of fraud were part of the list of factors used to determine actual fraudulent intent under Fla.Stat. § 726.01 (repealed 1987). *See, e.g., United States v. Fernon,* 640 F.2d 609, 613 (5th Cir. Unit B Mar.1981); *United States v. Ressler,* 433 F.Supp. 459, 464 (S.D.Fla.1977).

deed that does not identify the beneficiaries, the nature and purpose of the trust, or the trust agreement of record, the grantee receives fee simple title to that property, unless a contrary intention appears in the deed or conveyance. *Glusman v. Warren*, 413 So.2d 857, 858 (Fla. Dist.Ct.App.1982); Fla.Stat. § 689.07(1) (1987). Thus, when Mr. Luxenberg and Josephine Romano held the title, they were the fee simple owners of the Spring Valley property. The federal tax liens attached to the Spring Valley property when Josephine Romano took title and became the fee simple owner of the property. *Phillips & Jacobs, Inc. v. Color–Art, Inc.*, 553 F.Supp. 14, 16 (N.D.Ga.1982) ("A federal tax lien arises upon assessment and demand, and attaches to all property or rights to property of the taxpayer, including property acquired after the date of the assessment."); 26 U.S.C. §§ 6321–6322 (liens arise at assessment and continue until liability is satisfied or becomes unenforceable because of time lapse). Once the federal tax liens attached, the Spring Valley property remained subject to the liens even when it was transferred to Anthony Mario Romano. *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.' "); 26 U.S.C. §§ 6321–6323 (1988).

In support of the Romanos' position, witnesses testified that errors had been made in the drafting of the documents introduced by the government. This court understands that inaccuracies occur; but when mistakes and omissions happen to the extent they have in this case, the suspicion regarding the transactions must be cleared away with evidence. The Romanos failed, however, to demonstrate that Anthony Mario Romano was the true, legal owner of either the California or the Spring Valley properties. The evidence shows, instead, that Tony and Josephine Romano were the owners of those properties and that they intentionally shifted the Spring Valley property among family and friends to keep it away from their creditors.

*3. The Third Badge of Fraud: Timing of the Conveyance.*

Josephine Romano was the fee simple owner of the Spring Valley property. *See* Fla.Stat. § 689.07(1). The government filed suit against her and her husband in September 1987, and she transferred title to Anthony Mario Romano in July 1988. At the time of the transfer, Anthony Mario Romano had reached the age of majority, and the conveyance would appear to be what the grandfather had wanted. Nevertheless, when a debtor transfers property after being sued, an indication of fraud results that the debtor must rebut. *Id.* § 726.105(2)(d). Because this court is unconvinced by the testimony concerning the grandfather's gift and intent, it concludes that the conveyance to Anthony Mario Romano was done to defraud the Romanos' creditors and not to satisfy the wishes of a loving grandfather.

*4. Effect of the Fraudulent Conveyance.*

When taken together these badges of fraud demonstrate the existence of fraud per se on the Romanos' part. *Banner Constr.*, 128 So.2d at 896. The government met its burden of proof and overcame any presumption against the existence of fraud. *See Scott v. Dansby*, 334 So.2d 331, 333 (Fla.Dist.Ct.App.1976). With clear and convincing evidence, the government demonstrated that the Romanos are the true owners of the Spring Valley property and that they intentionally transferred the property to delay, hinder, and defraud their creditors. *Fernon*, 640 F.2d at 613; *McCrary v. Bobenhausen*, 366 So.2d 77, 78 (Fla.Dist.Ct.App.1979) (per curiam); Fla. Stat. § 726.105(1)(a). The Romanos did not show that the conveyance was made in good faith, and, as a result, they were unable to rebut the government's case against them. *United States v. Hickox*, 356 F.2d 969, 974 (5th Cir.1966); *Ressler*, 433 F.Supp. at 464.

Under the UFTA a transfer of property is not voidable against a person who took

the property in good faith and for a reasonably equivalent value. Fla.Stat. § 726.109(1). Anthony Mario Romano bought the property for $10.00 plus love and affection. According to Florida law,

[a] purchase made by one not a creditor is fraudulent and void as against creditors, even though the purchaser has paid an adequate consideration, where the seller has at the time a purpose or intent to defraud his creditors, or to hinder and delay them in the collection of their debts, and the purchaser knew of such purpose or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the [seller's] fraudulent purpose, and the buyer did not make such inquiry.

*Jackson v. Citizens' Bank & Trust Co.*, 53 Fla. 265, 283, 44 So. 516, 522 (Div.B 1907); *accord Williams v. Finlayson*, 49 Fla. 264, 266, 38 So. 50, 51 (Div.B 1905) (conveyance may be set aside even though purchaser has paid fair market value, if seller/debtor's intent was to defraud creditors and reasonable purchaser would have known of such intent).

As inferred from the evidence, Anthony Mario Romano either knew of, or had reason to suspect, his parents' purpose in conveying the property to him. The circumstances surrounding the conveyance should have induced him to question his parents. If he had, he would have uncovered their fraudulent intent. Consequently, Anthony Mario Romano did not take the property to fulfill his grandfather's desires. He took the property to assist his parents in defrauding their creditors. Thus, the conveyance of the Spring Valley property to him was fraudulent. It is void with respect to the creditors of the Romanos and is set aside. *See* Fla.Stat. § 726.108(1)(a).

Federal tax liens encumber the Romanos' property, both real and personal, and their rights to that property. As a result, the Spring Valley property is subject to the payment of the Romanos' tax debt. 26 U.S.C. §§ 6321–6323. The liens may be foreclosed and the Spring Valley property sold pursuant to 26 U.S.C. § 7403 (1988). The proceeds from the sale of the property shall be divided among the government and the creditor-defendants based on their legal priority as outlined in 26 U.S.C. § 6323.

### B. *Issue Two: Whether the Statute of Limitations Applies*

■ The federal income tax liabilities of Tony and Josephine Romano for 1965 and 1968 were the subject of a United States Tax Court proceeding, which suspended the statute of limitations regarding the assessment and collection of taxes. *Id.* § 6503(a) (1988). Because of the tax court action, the government gave the Romanos timely notice of assessment and demand for payment for their 1965 and 1968 delinquent taxes on February 9, 1981; the assessments are presumed correct. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); 26 U.S.C. § 6503(a). Moreover, the government gave notices of assessments for the 1980, 1981, and 1982 tax liabilities in a timely fashion on December 26, 1983, January 2, 1984, and August 15, 1983, and the assessments are also presumed correct. *Welch*, 290 U.S. at 115, 54 S.Ct. at 9; 26 U.S.C. § 6501(a) (1988) (assessments generally made within three years after return is filed).

■ Because Tony and Josephine Romano voluntarily signed the collection waiver forms with respect to their 1965 and 1968 tax debts, the date by which the government had to bring suit against them was extended to December 31, 1988. *Id.* § 6502(a) (1988). The government filed the complaint in this action on September 22, 1987, well within the extended time limit and well within the time period allowed to bring suit for the 1980–82 tax liabilities. *Id.* (suit must be brought within the period that the Secretary of the Treasury and the taxpayer agreed to in writing or within six years from assessment).

■ During the trial, the Romanos elected to stipulate that the income tax assess-

ments against them were valid and correct. The Romanos' open-court stipulation, which the government accepted, binds them as if it had been reduced to a writing and formally executed. *Anderegg v. High Standard, Inc.*, 825 F.2d 77, 81 (5th Cir.1987), *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988); *In re Herrera*, 23 B.R. 796, 797 (Bankr. 9th Cir.BAP 1982). Therefore, in light of the government making the assessments and suing the Romanos within the relevant statutory periods,[5] Tony and Josephine Romano owe the government the uncontested amount of $1,183,960.48 plus statutory additions.

## III. CONCLUSION

Tony and Josephine Romano must pay the government $1,183,960.48 in outstanding tax liabilities plus statutory additions. The conveyance of the Spring Valley property to Anthony Mario Romano was fraudulent; it is void with regard to the Romanos' creditors and is set aside. The federal tax liens have attached to the Spring Valley property. Foreclosure proceedings may begin and the property sold. The proceeds from the sale of the Spring Valley property shall be divided among the government and the creditor-defendants based on their legal priority.

If the revenue gained from the sale of the Spring Valley property does not satisfy the government's claims, the government shall have a deficiency judgment for any remaining indebtedness. The government shall prepare the judgment stating with particularity the assessments, costs, penalties, and interest to which it is entitled by law. The government has fifteen (15) days from the date of this order to submit the judgment.

It is SO ORDERED.

---

5. In a case such as this, the government is not subject to state statutes of limitations; it is subject to federal time constraints. *See United States v. Summerlin*, 310 U.S. 414, 417, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Fernon*, 640 F.2d at 612.