UNITED STATES of America,
Appellant,

v.

Adolph KAPLAN, Celina Kaplan and
Donald Kaplan, Appellees.

No. 17995.

United States Court of Appeals
Fifth Circuit.

April 18, 1960.

Anthony L. Mondello, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., Robert F. Nunez, Asst. U. S. Atty., Tampa, Fla. (George Cochran Doub, Asst. Atty. Gen., James L. Guilmartin, U. S. Atty., Dept. of Justice, Washington, D. C.), for appellant.

Monte J. Tillis, Jr., Louis Glick, Miami, Fla., for appellees.

Before RIVES, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the United States from the district court's adverse judgment in its suit to set aside an alleged fraudulent conveyance. The principal questions presented are: (1) whether the United States had standing to sue as a judgment creditor; and (2) whether the district court erred in finding that an oral trust existed in favor of the transferee, which made legal the transfer to him without consideration. We answer both questions in the affirmative and reverse the judgment.

In February 1952, the Government filed a civil action, United States v. American Packing Corporation, D.C.N.J. 1954, 125 F.Supp. 788, alleging the commission by the appellees, Adolph Kaplan and Celina Kaplan, and others of fraud in the performance of Government contracts. This action resulted in a judgment for the United States for approximately three-quarters of a million dollars in November 1954. In an attempt to collect on this judgment the United States filed its "creditor's bill" on April 11, 1957, in the United States District Court for the Southern District of Florida seeking: (1) to enjoin the appellees from disposing of or encumbering eight shares of stock in the Rodon Realty Corporation; and (2) to have the conveyance of these shares from Celina Kaplan to Donald Kaplan made on March 25, 1953, set aside, and the property subjected to satisfaction of the judgment. In the answer to the complaint it was stated that Celina Kaplan had legal title to, and that her son, Donald, was the equitable owner of, the Rodon Corporation stock, and that the conveyance from Celina to Donald was made pursuant to a "trust for the said Donald Kaplan." [1] At the trial the Government called Celina and Donald as adverse witnesses. Celina testified that the conveyance of eight shares of stock was made in March 1953, during the pendency of the fraud action in New Jersey, but not because of the suit. She stated that there was no consideration received from Donald or anyone else for this transfer. She said that she formed the corporation in 1945 and conveyed to it some real estate which she had owned in her own name for several years. The name of the corporation was a contraction of the first names of her two sons, Robert and Donald. Of the ten shares of stock in the corporation, two shares were issued to an individual in New Jersey and to Celina's sister. The other eight shares were issued to Celina in her own name without any indication on them of any other interest in the shares. She was an officer in the corporation, sold and added to its assets, borrowed money from it without a note or other evidence of debt, and controlled it.

The Government sought to show that the profits of the corporation were used by Celina as her own. The following colloquy followed the admission that the corporation made profits:

"Q. All right. Now, what was done with the money that was received from Rodon Realty? A. When?

"Q. Well, at any time.

---

1. The answer of Adolph Kaplan denied that he had ever owned any stock in the Rodon Corporation or had ever conveyed any to Donald Kaplan, and moved that he be dismissed as a defendant in the action. The district court found this to be the case and this finding is left undisturbed.

"Mr. Tillis (counsel for appellees): I object to it, Your Honor, as being improper.

"The Court: Did you utilize the profits as stockholders or not? A. No, mostly it was used and money was taken for my boys for their needs.

"Q. What kind of needs? A. College, medical, insurance possibly; I don't remember.

"Q. You don't remember what the costs were?

\*  \*  \*  \*  \*  \*

"A. No.

"Q. What the money was used for? A. No.

"Q. And you are sure you don't remember what the money was used for? A. (No answer.)"

The questioning and testimony of Donald on this matter in essence were as follows:

"Q. Were they paying your tuition too or were you paying part of it? A. I would have to look back in my old check book to find out.

"Q. You don't remember whether you were paying any of your tuition \* \* \* A. I imagine I paid part of it and they paid part of it, I don't know.

"Q. Now, your source of income was what you got from your singing. A. Yes.

"Q. Now, did your parents give you an allotment? I mean did you get so much every month, or when they would write you a letter did they put some in, or just how did they \* \* \* A. Well, I would say like this. When I went down to school I took a certain sum \* \* \* I don't know how much it was \* \* \* each year from my bank up north or from wherever I had gotten it, and I would put it into a bank in Miami, and utilized it in spacing myself. I utilized my own money spacing myself, and whatever I took in as a singer I put into

that account. So, it would be hard for me to say which money went where.

"Q. Now—

"The Court: When did you get this money—get any money from your mother? A. Well, we've always shared in the cost of my clothes and the cost of my college education. I got it before I would go to Miami each year, and if I would run short they would send me some more."

Donald also testified that he had had access to the funds from the time of his twenty-first birthday and regarded them as his own.

With respect to the formation of the trust, Celina stated that it was formed "right after [her] son [Donald] became 13 and became a man as it is in our religion." Donald was born on December 23, 1930. Actually, he became 15 years of age in the year the trust was allegedly formed instead of 13. The conveyance of the shares of stock, she said, was to be made when the two sons became 21 years of age. It was actually all made to one son, Donald, when he was 22½ years old. None was reserved or given to the other son. The explanation given for this delay was:

"I did not wait, but my accountant and my attorney didn't carry out my wishes at the proper time, and then my attorney had an [sic] heart attack, and my son was not available at all time; he was in California, and travelling."

Donald Kaplan testified that after his 21st birthday he visited his parents prior to his trip to California, that the "accountant who was handling the transaction was in the hospital with a heart attack," and that he requested a transfer of the account on the occasion of a return visit in December 1952. He stated that, sometime during this period, he withdrew money from the corporation by asking his mother to write him a check which she did. He further stated that he thought that this check and

one or two others were treated on the books of the corporation as *loans* from the corporation to him. Donald related that the Rodon Corporation was dissolved by August 1957, and that he retained the liquidating dividends of $19,-000. With respect to Robert's ownership of four shares of the stock, Donald testified that Robert knew of and favored the dissolution, and entered into a verbal agreement, in lieu of a share of the liquidation proceeds, that Donald would take him into whatever business he had upon Robert's attainment of the age of 21.[2]

■ On the right of the Government to proceed in a creditor's action, appellees contend that the New Jersey action was a criminal suit based upon a criminal statute, and that there was no debt existing at the time of the transfer. Thus, it is said that the Government was not a creditor and had no standing or basis to bring the instant suit. The appellees are clearly wrong on this point as both the judgment and the opinion of the district court, introduced in evidence here, reveal that the New Jersey suit was a civil action. This was a civil action notwithstanding the fact that the Government was seeking double damages. As was said in United States ex rel. Marcus v. Hess, 1942, 317 U.S. 537, 550, 63 S.Ct. 379, 387, 87 L.Ed. 443, "This remedy does not lose the quality of a civil action because more than the precise amount of so-called actual damage is recovered." To the same effect is the opinion of this Court in United States v. Weaver, 5 Cir., 207 F.2d 796, 798. Congress provided for treble damages for private litigants in the antitrust laws. If it so chose, it could provide the same measure of damages for the Government in the New Jersey action, and this fact would not convert a civil action into a criminal one.

■ Reliance is placed by appellees upon the trial court's findings that an oral trust was established requiring the transfer to Donald, and that the appellant failed to prove the material allegations of either legal or actual fraud. Of course under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., it is not for the appellate court to substitute its judgment on disputed issues of fact for that of the trial court where there is substantial credible evidence to support its findings. However, as stated by this Court in Sanders v. Leech, 5 Cir., 158 F.2d 486, 487:

> "It may reverse, though, under the rule (1) where the findings are without substantial evidence to support them; (2) where the court misapprehended the effect of the evidence; and (3) if, though there is evidence which is credible would be substantial, the force and effect of the testimony considered as a whole convinces that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case."

■ It is clear, from a reading of the record of the case, including the oral judgment made by the trial court, the Judge did not fully comprehend the nature of the Government's case, i. e., proof of a transfer by Mrs. Kaplan, while insolvent without consideration, or property belonging to her would entitle the Government to relief without proof of actual fraud. See Williams v. Travis, 5 Cir., 277 F. 134, and Weathersbee v. Dekle, 107 Fla. 517, 145 So. 198. Such proof having been made without dispute, the burden then shifted to the de-

---

2. Robert Kaplan was not named as a defendant in the action because appellees' original answer to the complaint stated that the trust was established for Donald alone. The answers to interrogatories received by the Government's counsel several days before trial indicated for the first time the fact that four shares of the stock had purportedly been conveyed to Donald and four to Robert. Counsel asked that the Government be allowed to amend its pleadings and make Robert a party and to have the trial continued. However, no clear motion or ruling thereon was ever made, and the trial proceeded on the original pleadings.

fendants to prove that what on the record was Mrs. Kaplan's property did in reality belong to her son or sons because of the existence of an oral trust.

■■ In a case in which reliance is placed on the existence of an oral and secret trust, this burden is a heavy one. The Florida cases make this plain. See Foster v. Thornton, 131 Fla. 277, 179 So. 882, where the court quotes with approval the following language from Geter v. Simmons, 57 Fla. 423, 49 So. 131, 133:

> "Evidence to establish a resulting trust must be so clear, strong, and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of the trust."

and from Brown v. Brown, 106 Fla. 423, 143 So. 737, 738:

> "When a resulting trust is sought to be established by parol evidence, the burden rests upon the person asserting the existence of the trust to remove every reasonable doubt as to its existence by clear, strong, and unequivocal evidence. Fox v. Kimball, 92 Fla. 401, 109 So. 465; McGill v. Chappelle, 71 Fla. 479, 71 So. 836; Semple v. Semple, 90 Fla. 7, 105 So. 134; Johnston v. Sherehouse, 61 Fla. 647, 54 So. 892."

■ Here the evidence as to the existence of the asserted trust was all given by Celina, the alleged trustee, and Donald, the alleged beneficiary, who were called as adverse witnesses by the appellant. This testimony was ambiguous, confused, vague and in some respects contradictory to prior sworn depositions and interrogatories and factually insufficient standing alone to permit the trial court to make a finding as to the exact terms of a trust which would impose on Mrs. Kaplan the legal obligation to transfer the stock of this corporation, standing in her own individual name, to her son Donald. It may be that the records of the corporation, if tendered in evidence, the income tax returns of the corporation and those of Mrs. Kaplan showing what income, if

any, was paid, and whether she filed tax returns in a fiduciary capacity, etc., would support the appellee's claim that she held only the naked legal title to the stock and was under an obligation to convey it to the transferee. The action of the trial court in entering judgment for the defendants without hearing such evidence as might have been tendered by them makes it impossible for us to know whether all the proof available would have met the strict standard required to establish the existence of the oral trust.

Thus the case stood when the trial court entered judgment for the defendants without hearing from them. This judgment must be set aside and the case Remanded for a new trial.