UNITED STATES of America, Plaintiff,

v.

H. Barry RESSLER et al., Defendants.

Civ. No. 75–1524–Civ–SMA.

United States District Court,
S. D. Florida.

May 25, 1977.

Robert W. Rust, U. S. Atty., Miami, Fla., Martin B. Whitaker, Atty., Tax Div., Civ. Trial Section, Dept. of Justice, Washington, D.C., for plaintiff.

Sidney A. Soltz, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, District Judge.

This cause having been heard by this Court, Honorable Sidney M. Aronovitz, Presiding, the Court having considered the stipulation of the parties, the evidence offered at trial, and the argument of counsel, and having considered the applicable law, the Court finds as follows:

### FINDINGS OF FACTS

1. This is an action brought by the United States under Sections 7401, 7402 and 7403 of the Internal Revenue Code of 1954 (26 U.S.C.), in which the United States seeks to set aside as having been in fraud of creditors conveyances of a certain parcel of real property by defendants H. Barry Ressler and Oscar M. Williams. The United States also seeks to reduce to judgment certain unpaid federal tax liabilities of defendant Ressler and to foreclose certain federal tax liens outstanding against defendant Ressler on the subject property.

2. Federal jurisdiction is based upon 28 U.S.C. Sections 1340 and 1345.

3. The federal tax assessments against defendant Ressler which plaintiff seeks to reduce to judgment and collect upon by foreclosure are income and Section 6672

100% penalty tax assessments as set forth in the Pretrial Stipulation, which is incorporated herein by reference. The income tax assessments are for the years 1958–1965, 1967–1971 and 1973–1974. The "trust fund" 100% penalty assessments are for quarters in 1961, 1962, and 1970–1972. The total unpaid balance of the assessments is $33,619.01, plus statutory additions.

4. Defendant Ressler does not contest the merits of the various assessments, and has conceded that the tax assessments against him are correct and valid. Plaintiff's tax liens, which were filed and refiled as indicated in the above Pretrial Stipulation, were duly and properly filed and refiled with the Clerk of the Court of Dade County, Florida.

5. By warranty deed of August 25, 1960, defendant Ressler purchased property from a John E. and Pauline H. Laffey. Said property is described as "Lot 5 of Sun Grove Estate, according to the Plat thereof recorded in Plat Book 64, at p. 14 of the Public Records of Dade County, Florida," and is a house and lot located at 11920 S.W. 89th Avenue, Miami, Florida. The exact purchase price is unclear. The documentary stamps on the warranty deed indicate a purchase price of $35,000, while defendant Ressler contends that the purchase price was $30,000.

6. In conjunction with the purchase of the subject property, defendant Ressler executed a mortgage on the subject property to Keyes-Penn Mortgage Company. Said mortgage is dated September 12, 1960, and was recorded on September 14, 1960. The mortgage has been assigned to defendant Provident Mutual Life Insurance Company of Philadelphia. The mortgage was in the original amount of $27,000.

7. On February 13, 1961, Ressler conveyed an undivided one-half interest in the subject real property to his sister, Roberta Tavel, by warranty deed recorded on February 16, 1961. The warranty deed does not state that the conveyance was made subject to the mortgage on the property. There was no consideration paid by Roberta Tavel for the conveyance to her of the undivided one-half interest in the subject property. Further, Roberta Tavel was not advised of the conveyance or otherwise made aware of it on or about the time of the conveyance.

8. At the time of the conveyance, Ressler was president of Public Mortgage Company and its affiliates. According to testimony given by Ressler in a prior proceeding, the transfer was made to his sister, Roberta Tavel, as security for monies Ressler's parents had invested in Public Mortgage Company. Ressler stated in the prior proceeding that he was concerned with protecting the subject property "from judgment or attachment or anything else" with respect to claims of creditors arising from the financial difficulties of the various Public Mortgage Companies.

9. Roberta Tavel remains to this date the legal owner of an undivided one-half interest in the subject property. However, defendant Ressler has continuously, from the date of purchase of the property to the present time, occupied the subject property as his residence. Ressler treats the property as his own. Roberta Tavel does not consider the property to be hers.

10. Also on February 13, 1961, Ressler conveyed the remaining undivided one-half interest in the subject property to Oscar M. Williams by warranty deed of that date, which deed was recorded on February 16, 1961. The deed did not make the conveyance subject to the existing mortgage. Ressler remained personally liable on the mortgage. At the time of the conveyance, Oscar Williams was associated with Ressler in Public Mortgage Company.

11. Ressler and Williams were close friends at the time of the conveyance, and were residing together in the subject property when the conveyances were made by Ressler to Williams and Tavel. Ressler and Williams had been residing together in a different house at the time Ressler purchased the subject property. From the purchase of the subject property by Ressler in August of 1960 through the present day, Ressler and Williams have both continuously occupied the property as their residence. Both men remain in occupancy as of this date.

12. Williams did not pay any part of the cash downpayment on the subject property at the time Ressler purchased it, nor did Williams provide any actual consideration for Ressler for the conveyance to Williams of the one-half interest in the property. Some furnishings owned by Williams may have been used in furnishing the subject property. The value of those furnishings was minimal, however.

13. The mortgagee of the subject property was not advised of either of the conveyances until January of 1964. From 1960 through 1963 Ressler had a series of dealings with the mortgagee with respect to delinquent payments. In January of 1964, Ressler visited the offices of the mortgagee in an attempt to prevent foreclosure of the mortgage. At that time, Ressler stated that it was his desire to continue to occupy the house as his home.

14. From 1960 through 1963 Ressler was solely responsible for the mortgage payments which were made. During 1964 through 1966, Ressler made the mortgage payments out of his personal checking account. Subsequent to 1966, mortgage payments on the property were made by Williams, who was reimbursed, in whole or in part, by Ressler. Williams began making the mortgage payments in 1966 because Ressler had discontinued use of checking accounts because of seizure of the accounts by the Internal Revenue Service for unpaid taxes.

15. On September 15, 1969, defendant Williams conveyed by deed his undivided one-half interest in the subject property to his sister, Harriet Williams, which deed was recorded on the same date. Defendant Harriet Williams remains to this date the legal owner of an undivided one-half interest in the subject real property. Harriet Williams was not advised of the conveyance to her at the time of the conveyance. There was no consideration paid by Harriet Williams for the conveyance to her of the undivided one-half interest. The conveyance was made at the time that Williams was considering filing with the Internal Revenue Service an offer to compromise certain unpaid tax liabilities and was, according to Williams, suggested by Williams' accountant. The offer in compromise entailed submitting a financial statement to the Internal Revenue Service. At all times subsequent to the conveyance by Oscar Williams to his sister Harriet Williams, Oscar Williams has occupied the subject property as his residence.

16. In November of 1970, Ressler, during an interview with Special Agent Hampton of the Intelligence Division, Internal Revenue Service, Miami, Florida, stated that since he occupied the subject property, he considered the property to be his. Ressler attempted later to modify that statement by stating that title to the house was "so confused that he did not know who owned it." Ressler is a graduate of Princeton University and the University of Miami School of Law.

17. Defendant Ressler forged the name of Roberta Tavel to the 1970 Homestead Exemption Renewal Application of Dade County, Florida. Said application was required to be signed by the owners of the property.

18. At the time of the conveyances by Ressler in February of 1961, Ressler claimed, in answer to interrogatories, to have had assets, other than the subject property, with an equity value of some $35,000. The evidence at trial cast considerable doubt upon that allegation, since it was shown that some of the listed assets were pledged as collateral for loans, and Ressler was unsure of whether other assets had already been pledged as collateral or lost to creditors prior to the February, 1961 conveyances. Ressler also owned a 30 percent interest in Public Mortgage Company and its subsidiaries. That interest was of dubious value at that time however, because of the impending financial difficulties of the company, of which Ressler was aware. At the trial of this matter, Ressler, who was present and was represented by counsel, chose to rest without presenting any evidence. There was no evidence offered by Ressler concerning his financial situation at the time of the conveyances in 1961. Evi-

dence presented by the plaintiff established that Ressler's parents contributed substantially to his support and maintenance throughout the 1960's, subsequent to the conveyances. Therefore, the United States made out a prima facie case, which went unrebutted, that the conveyance by Ressler of the subject property, while retaining the $27,000 mortgage liability, substantially reduced Ressler's net worth and had the effect of defeating or hindering Ressler's creditors.

19. In 1972, Ressler was indicted in the United States District Court for the Southern District of Florida for a violation of Section 7206 of the Internal Revenue Code of 1954, in that Ressler filed with the Internal Revenue Service, in connection with an offer to compromise delinquent tax liabilities, a false financial statement. According to the indictment, one of the assets which Ressler fraudulently failed to list as his own asset was the property involved in this matter.

20. Ressler pled guilty to a violation of Section 7207 of the Internal Revenue Code of 1954 in that the financial statements submitted to the Internal Revenue Service which formed the basis of the indictment was known by him to be fraudulent or false as to a material matter. The Judgment of Guilt in the case of *United States of America v. H. Barry Ressler*, No. 72–913–CR–JLK, SD Fla., as described above, was filed on February 26, 1973.

21. At the time of the conveyances by Ressler in February of 1961, plaintiff United States of America was creditor of Ressler by virtue of federal income tax liabilities for the years 1958, 1959 and 1960. At the time of the conveyance, Ressler was aware that he had failed to file forms 1040, Federal Income Tax Returns, for the years 1958 and 1959. It was subsequently determined that Ressler did owe income taxes for 1958 and the subsequent years. At the time of the conveyances by Ressler in February of 1961, mortgagee Provident Mutual Life Insurance Company of Philadelphia was also a creditor of defendant Ressler.

22. Subsequent to the conveyances by Ressler in February of 1961, Ressler incurred additional federal tax liabilities, as listed above. The United States has been unable to collect the unpaid taxes. Therefore, the conveyances by Ressler have had the effect of hindering and delaying legal creditors of Ressler.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties hereto and over the subject matter of this action.

2. Federal tax liens did not come into existence with respect to all property and rights to property belonging to defendant Ressler until the dates of assessment and notice and demand for payment, subsequent to February, 1961. Therefore, federal tax liens did not attach to the legal title to the subject property. In such a situation, where a taxpayer disposes of property prior to the existence of federal tax liens, the United States may seek relief under the applicable fraudulent conveyance laws of the particular state in which the property and taxpayer are located. *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); *United States v. Kaplan*, 277 F.2d 405 (5th Cir. 1960).

3. Regardless of when federal taxes are actually assessed, taxes are considered as due and owing, and constitute a liability, as of date the tax return for the particular period is required to be filed. *Hartman v. Lauchli*, 238 F.2d 881 (8th Cir. 1958); *United States v. Adams Building Co.*, 531 F.2d 342, fn. 2 (6th Cir. 1976); *United States v. Hickox*, 356 F.2d 969 (5th Cir. 1966). Because of federal income tax liabilities of Ressler which had accrued for his tax years 1958 and 1959 (which became liabilities on April 15, 1960 and 1961, respectively, by operation of Sections 6151 and 6072 of the Internal Revenue Code of 1954), the United States was an existing creditor at the time of the transfer of the subject property by Ressler in 1961, although the United States had no outstanding federal tax liens. See *United States v. Hickox, supra; Leon Papineau v. Commissioner*, 28

T.C. 54 (1957); and *Sidney Kreps v. Commissioner*, 46 T.C. 560 (1954).

4. The applicable local law in this matter is *Florida Statute* Section 726.01 et seq. Under *Fla.Stat.* Sec. 726.01, a conveyance in fraud of creditors is void as to creditors. Under *Fla.Stat.* Sec. 726.07, a fraudulent conveyance is void against subsequent purchasers except bona fide purchasers for value.

■ 5. In order for the conveyance to be fraudulent as to creditors, the transferor must intend to hinder and delay the creditors. There must be a "design of the debtor to prevent his creditor from satisfying his debt." See *15 Fla.Jur.* "Fraudulent Conveyance" Section 7. An evil motive is not required. The requirement is merely "an intentional act prejudicial to creditors."

■ 6. With respect to creditors existing at the time of the conveyance under attack, under Florida law a conveyance without consideration by one who is indebted is presumptively fraudulent, regardless of the actual intent of the transferor. *Ostend Realty Co. v. Biscayne Realty and Insurance Co.*, 99 Fla. 1221, 128 So. 643 (1930).

■ 7. As in other jurisdictions, the courts in Florida have fashioned "badges of fraud" the existence of which will justify the inference of the requisite intent to hinder or delay creditors. See *Banner Construction Corp. v. Arnold*, 128 So.2d 893 (Fla.App.1961); *Frell v. Frell*, 154 So.2d 706 (Fla.App.1963). Factors indicating the actual fraudulent intent are absence of consideration, family relationship of the parties to the transfer; retention of possession of the property by the transferor; failure to notify the transferee of the transfer; and the financial condition of the transferor after the transfer.

■ 8. Retention of possession of the property after the transfer creates a prima facia presumption of fraud. *Jones v. Wear*, 111 Fla. 69, 149 So. 345 (1933). The close relationship of the transferee to the transferor tends to establish a prima facie case of a fraudulent conveyance which must be then met by the defendant. *Money v. Powell*, 139 So.2d 702 (Fla.App.1962).

■ 9. Applying the above legal principles to the instant case, the Court concludes that plaintiff has met its burden of proof in all respects. The evidence was, at the very least, sufficient to make out a prima facie case of fraud, thus shifting to the defendants the burden of proving that the conveyances were not fraudulent. See *United States v. Hickox, supra*, and the cases cited in paragraphs 6, 7, and 8 above. Since defendants Ressler, Oscar Williams, Harriet Williams and Roberta Tavel did not present any evidence, plaintiff's case was not rebutted. With respect to the transfer to Roberta Tavel, the transfer having been to a family member and without consideration, the transfer is presumptively fraudulent. Additionally, the facts that Ressler did not advise his sister of the transfer; that he has continued to this date to occupy the property as his residence; and that he made mortgage payments and in other respects treated the property as his own, as described more specifically in the foregoing Findings of Fact, all lead to the inescapable conclusion that the transfer to Roberta Tavel was fraudulent within the meaning of the Florida statutes, was void as to creditors and thus may be set aside by the United States.

■ 10. With respect to the transfer by Ressler to Oscar Williams, defendant Ressler has not rebutted the prima facie case established by the United States. The apparent close relationship between Ressler and Oscar Williams, the retention of possession of Ressler, Ressler's continuing after the transfer to make mortgage payments and otherwise deal with the property as his own, combined with Ressler's admission in prior testimony that he was concerned with protecting the subject property "from judgment or attachment or anything else" with respect to claims of creditors arising from financial difficulties of Public Mortgage Company and its affiliates, all establish that the transfer to Oscar Williams was a fraudulent conveyance within the meaning of the Florida statutes. Defendant Ressler

has not rebutted the case proven by the United States.

11. Since the conveyance to Oscar Williams was void as to creditors, the subsequent conveyance by Oscar Williams to his sister, Harriet Williams, without consideration, was also void. Harriet Williams was not a bona fide purchaser who could receive the property free of the fraudulent taint.

12. The United States has thus proven that the conveyances by Ressler of the subject property are void and must therefore be set aside. Since the conveyances are void, the federal tax liens attach to the subject property by operation of Section 6321 of the Internal Revenue Code, and may therefore be foreclosed by a sale of the property in accordance with Section 7403 of the Internal Revenue Code. Proceeds from the sale of the property will be divided among plaintiff and the other creditor-defendants according to their priorities as determined under Section 6323 of the Internal Revenue Code of 1954.

13. To the extent that proceeds from the sale of the property are insufficient to satisfy the claims of the United States against Ressler, since Ressler has not contested, and in fact has stipulated to, the correctness and validity of the various tax assessment, judgment will be issued in favor of the United States against defendant Ressler in the amount of the unpaid tax assessments, plus statutory additions according to law. Plaintiff shall recover its costs.