**Margie Reed HARPER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 90–104–Civ–Oc–12.

United States District Court, M.D. Florida, Ocala Division.

April 30, 1991.

Sidney A. Soltz, Miami, Fla., for plaintiff.

Robert W. Genzman, U.S. Atty., Mark Stier, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

MELTON, Senior District Judge.

This cause is before the Court upon plaintiff Margie Reed Harper's ("Harper") request under 26 U.S.C. § 7429 (1988) for judicial review of an April, 1990, transferee jeopardy assessment made against her by the Internal Revenue Service ("IRS") for unpaid federal income taxes of her former husband Rodney W. Reed. The Court conducted an evidentiary hearing on December 12, 1990, at which time both parties presented evidence and examined witnesses. The parties submitted proposed findings of fact and conclusions of law to the Court, as well as post-trial memoranda of law in support of their submissions. The Court has carefully considered the testimony and other evidence presented, and the entire record. Based thereon, the Court finds that the making of the transferee jeopardy assessment is reasonable and the amount of the transferee jeopardy assessment, abated as described within, is appropriate under the circumstances. Finding in favor of the defendant, the Court will dismiss plaintiff's action. In so holding, the Court makes the following Findings of Fact and Conclusions of Law in accordance with Fed.R.Civ.P. 52(a). To the extent that any Findings of Fact constitute Conclusions of Law, they are adopted as such; to the extent that any Conclusions of Law constitute Findings of Fact, they are likewise adopted as such.

## FINDINGS OF FACT

1. Harper was married to Rodney W. Reed ("Reed") from May 20, 1974, until July 2, 1981, when they were divorced.

2. In 1981, the IRS initiated audits as to Reed and Harper. For the years 1978 through 1981, Harper filed separate income tax returns and Reed did not file income tax returns. G. Exh. No. 7 at 21–23.

3. In preparation for the audits, an appointment letter was sent to Reed in June, 1981. T.T. at 14. During that month, the IRS conferred by telephone with E.M. Brantley, who represented Reed and Harper through a power of attorney. G. Exh. No. 9. At that time, Reed had knowledge of the audit and of his pending tax liability. T.T. at 13–14. The IRS determined that Reed's tax liability plus penalties for 1978 through 1981 exceeds $750,000.00. T.T. at 7.

4. In 1985, Reed was indicted for criminal tax violations for the years 1979, 1980, and 1981. He was acquitted on the 1979 charges and convicted of failure to file a tax return (26 U.S.C. § 7203) for 1980, and of tax evasion (26 U.S.C. § 7201) for 1981.

5. During their marriage, Reed and Harper acquired the MRS Ranch, a 350 acre-plus ranch in Sumter County, Florida, and the Carport property which Reed utilized in a used car business.

6. Harper invested $58,000.00 towards the purchase price of the MRS Ranch and $12,500.00 towards the purchase price of the Carport property. T.T. at 22–24.

7. In her divorce petition, Harper did not ask the Court for a division of the MRS Ranch, Carport, or other marital property. The final judgment of divorce, entered July 2, 1981, does not provide for a division of property between Harper and Reed or make reference to a separate property agreement. P.Exh. No. 9.

8. On September 27, 1981, Reed transferred to Harper the MRS Ranch, Carport, and other property, including federal land bank stock, a small house on land with orange groves owned by Harper, and a motor coach. T.T. at 9. The deeds conveying the property were prepared by Harper's daughter, Mary S. Maguire, and recited that "this conveyance is pursuant to property settlement agreement and dissolution of marriage." P.Exh. Nos. 10–13; T.T. at 80–81. The documentary stamps on the deeds reflect and Harper concedes that no monetary consideration was paid for the properties. P.Exh. Nos. 10–13; G.Exh. No. 7 at 35.

9. No property settlement agreement was ever reduced to writing and not even Harper's divorce attorney knew the details about such agreement. T.T. at 64–66.

10. The conveyances to Harper rendered Reed insolvent, that is, unable to pay his debts. G.Exh. No. 8; T.T. at 14–15.

11. At the time of the transfer to Harper, the MRS Ranch was encumbered by a mortgage of approximately $125,000.00. T.T. at 22. Taking into account Harper's investment in the ranch and the mortgage balance, the IRS calculated that the fair market value of the interest in the MRS Ranch transferred to Harper was $323,958.26. T.T. at 24.

12. Taking into account the value of Harper's original investment in the Carport property, including the appreciation attributable to her investment, the IRS calculated that the fair market value of the interest transferred to Harper was $102,150.00. T.T. at 24.

13. The IRS computed that the total value Reed transferred to Harper was $467,853.26 (MRS Ranch, $323,958.26; Carport property, $102,150.00; and other assets, $41,745.00). T.T. at 24.

14. Harper disposed of all the assets Reed transferred to her except the MRS Ranch. T.T. at 10. In January, 1990, she listed the ranch for sale with a real estate agent. G. Exh. No. 1. She executed two sales contracts for the property. G.Exh. Nos. 2–3.

15. On April 17, 1990, the IRS made a transferee jeopardy assessment in the amount of $658,860.00 against Harper for Reed's federal income tax liabilities for 1978–1981. The IRS recognizes that this amount exceeds the fair market value of the property transferred to Harper because it does not account for Harper's investment in the MRS Ranch and Carport property or the mortgage on the ranch. The IRS recalculated the fair market value of the property transferred to Harper as $467,853.26 as described above and concedes that the assessment should be abated accordingly. T.T. at 3 & 20–24.

16. Harper presented evidence to establish that the amount of the assessment was unreasonable because it attributes value to her that was not transferred. The government acknowledges and the Court finds that, regarding two items, Harper has made an evidentiary showing sufficient to warrant further abatement of the transferee jeopardy assessment. Government's post-trial Memorandum, filed January 7, 1991, at 15. First, Harper was half owner of the federal land bank stock, so she received only half its value upon transfer. T.T. at 38–39. The assessment must be abated by fifty percent of $8,750.00 or by $4,375.00. Second, Harper produced evidence that she paid $3,600.00 in taxes on the Carport property. P.Exh. Nos. 6–7. The assessment shall be further abated by that amount.

17. Though Harper contends that the amount of the assessment is excessive in several other respects, the Court finds that she has not met her burden of showing that the amounts assessed were inappropriate under the circumstances. Harper claims the IRS should have given her credit for $29,800.00 that she contributed towards the purchase of the "borrow pits," which were added to the MRS Ranch. Harper submitted a recently discovered "loan work sheet" for that amount, but produced no documentation to indicate that any loan proceeds were used to purchase the borrow pits. P.Exh. No. 8. At Reed's criminal trial, Harper testified that her only investment in the MRS Ranch was $58,000.00 towards the original purchase price; she specifically denied contributing towards the purchase of the borrow pits. G.Exh. No. 7 at 13–15. The Court thus finds the evidence presented by Harper on this point unpersuasive that further abatement is warranted.

18. Harper also contends that she never received some of the cattle the IRS included in its valuation of the MRS Ranch. She acknowledged, however, that at the time of transfer she did not verify whether the cattle were or were not on the ranch, and that they may have been there. T.T. at 77–78. Accordingly, Harper has not established that the amount of the transferee jeopardy assessment is inappropriate in this respect.

19. In addition, Harper asserts that the IRS should have given her credit for half ownership, rather than proportionate own-

ership, in the MRS Ranch and the Carport property because she contributed roughly half of the original purchase prices of these properties and her name appears along with Reed's on the deeds. After her initial contributions, Harper made no additional investments in these properties and was not involved in running the businesses. G.Exh. No. 7 at 14–19. It was thus appropriate for the government to credit her only for a proportion of the value.

20. Before making the transferee jeopardy assessment against Harper, the IRS determined that Reed lacked sufficient funds to pay his tax liabilities because he had transferred numerous valuable assets to Harper in September of 1981, had dissipated others soon thereafter, and had not amassed new assets, in part, because he was incarcerated after his conviction for criminal tax violations. T.T. at 8. The Court finds that this determination was reasonable under the circumstances.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over this cause pursuant to 26 U.S.C. § 7429(b) and 28 U.S.C. § 1346(a)(1).

2. Under 26 U.S.C. § 6861, the IRS is authorized to assess taxes against a taxpayer without the issuance of a statutory notice of deficiency when collection of the tax is determined to be in jeopardy. Collection of the tax is in jeopardy if one of the following is demonstrated: (1) the taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself; (2) the taxpayer is or appears to be designing quickly to place his property beyond the reach of the government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or (3) the taxpayer's financial solvency appears imperiled. Treas.Reg.Sec. 1.6851–1(a)(1).

■ 3. Under 26 U.S.C. § 6901, the IRS may assess and collect unpaid tax liabilities from transferees of the taxpayer's property. Section 6901 is procedural, however, and the substantive rule for transferee liability must be found in state law. *Commissioner v. Stern,* 357 U.S. 39, 42 & 46,

78 S.Ct. 1047, 1049 & 1051–52, 2 L.Ed.2d 1126 (1958). The government acknowledges that transferee liability is limited to the lesser of the tax liability of the debtor or the fair market value of the assets transferred. T.T. at 7.

4. Harper has instituted this action pursuant to 26 U.S.C. § 7429(b) requesting that the Court determine: 1) whether making the transferee jeopardy assessment is reasonable under the circumstances; and 2) whether the amount assessed is appropriate under the circumstances. Resolving the first issue in this case requires the Court to evaluate the government's reasonableness in assessing transferee liability against Harper as well as its reasonableness in making a jeopardy assessment. The burden is on the government to establish the reasonableness of both these determinations. 26 U.S.C. § 7429(g)(1). The plaintiff bears the burden of establishing that the amount of the assessment is not appropriate under the circumstances. 26 U.S.C. § 7429(g)(2). The standard the Court must apply is that of reasonableness: are the government's actions against Harper reasonable under the circumstances. Reasonableness means "something more than not arbitrary and capricious and something less than supported by substantial evidence." *Klotzman v. United States,* 618 F.Supp. 112, 113 (D.Md.1985).

■ 5. Under Fla.Stat. § 726.01, in effect in 1981 when the transfers from Reed to Harper occurred in Florida, Reed's transfers of his property to Harper were void as fraudulent if Reed intended to defraud his creditor, the IRS, by conveying property which could be used to pay his tax liability. *See United States v. Fernon,* 640 F.2d 609, 613 (5th Cir. Mar. 1981); *United States v. Ressler,* 433 F.Supp. 459, 464 (S.D.Fla.1977), *aff'd,* 576 F.2d 650 (5th Cir. 1978), *cert. denied,* 440 U.S. 929, 99 S.Ct. 1265, 59 L.Ed.2d 485 (1979); *Bay View Estates Corp. v. Southerland,* 114 Fla. 635, 639, 154 So. 894 (1934).

■ 6. For the purposes of a fraudulent conveyance action, a creditor must have at least one claim in existence when the transfers were made. *Whetstone v.*

*Coslick*, 117 Fla. 203, 207, 157 So. 666 (1934). The United States was a creditor with standing to institute a fraudulent conveyance action since the assessments made against Reed relate back to the tax years from which the liability arose. *United States v. Hickox*, 356 F.2d 969, 972 (5th Cir.1966); *United States v. Ressler*, 433 F.Supp. 459, 463 (S.D.Fla.1977).

7. When evidence of actual fraud is absent, courts look to "badges of fraud" to discern a debtor's intent in making a transfer. Lack of consideration for the transfer, a close family relationship between transferor and transferee, pending or threatened litigation, and insolvency or substantial indebtedness can indicate fraudulent intent. *Fernon*, 640 F.2d at 613; *Ressler*, 433 F.Supp. at 464; *Cleveland Trust Co. v. Foster*, 93 So.2d 112 (Fla.1957); *Stephens v. Kies Oil Co.*, 386 So.2d 1289, 1290 (Fla. 3rd D.C.A.1980).

8. The presence or absence of a particular badge of fraud is not deemed conclusive. *Fernon*, 640 F.2d at 613 n. 10.

9. To establish transferee liability, the government must also prove that all reasonable attempts to collect from Reed were made and that further collection efforts would be futile. *Kuckenberg v. Commissioner*, 35 T.C. 473, 482 (1960), *modified on other points*, 309 F.2d 202 (9th Cir.1962). As IRS revenue agent Stalla testified at trial, the unpaid taxes could not be collected from Reed because he had transferred numerous valuable assets to Harper, dissipated others soon afterward, and had not amassed new assets during his incarceration for tax violations.

10. The government's belief that Reed's transfer of the property to Harper was fraudulent under Florida law is reasonable. At the time of the transfer, Reed was aware of an actual or potential tax liability to the United States. He made the transfer of these valuable assets to his ex-wife, pursuant to an unwritten, allegedly previously agreed upon property settlement agreement, when he knew he was being audited by the IRS and faced tax penalties. Harper's divorce attorney lacked knowledge of a single detail of the purported agreement. The deeds conveying the property reflect that Harper paid no monetary consideration for the properties. Though the deeds recite that the conveyances were made pursuant to a property settlement, they were prepared by Harper's daughter over two months after the divorce was final. Under these facts, the government is reasonable in determining that transferee liability is established under Florida law.

11. Harper had previously sold all the assets Reed transferred to her except the MRS Ranch. Given that fact, the recent listing of the MRS Ranch, and the executed purchase/sale contracts, the IRS also reasonably concluded that Harper was or appeared to be designing quickly to place the MRS Ranch beyond the reach of the government by transferring it to other persons and that if such sale were completed, collection of Reed's unpaid taxes was in jeopardy. The government thus has met its burden of establishing that the transferee jeopardy assessment against Harper is reasonable.

12. Harper bears the burden of establishing that the amount of the transferee jeopardy assessment is unreasonable. 26 U.S.C. § 7429(g)(2). The amount of a jeopardy assessment is presumed to be reasonable. *Loretto v. United States*, 440 F.Supp. 1168, 1172 (E.D.Pa.1977). Courts have recognized that jeopardy assessments are of necessity based on assumptions and may be lacking a degree of certainty. *See, e.g., Homan Manufacturing Co. v. Long*, 242 F.2d 645, 650 (7th Cir.1957). Though the amount of the government's assessment may eventually be reduced further by the Tax Court, plaintiff has not demonstrated that the government made some mistake of law or fact so as to render the amount assessed, when abated as indicated above, inappropriate under the circumstances.

Accordingly, it is

ORDERED AND ADJUDGED:

1. That the making of the transferee jeopardy assessment is reasonable;

2. That the transferee jeopardy assessment shall be abated from $658,860.00 to $467,853.26 and further abated in the amounts of $4,375.00 and $3,600.00, for a revised transferee jeopardy assessment of $459,878.26;

3. That the abated assessment amount is appropriate under the circumstances; and

4. That plaintiff's complaint is dismissed with costs to be assessed as provided by law.

DONE AND ORDERED.