James P. VEIGLE, Charles Veigle,
Vernon D. Hysell and Sandra
D. Hysell, Plaintiffs,

v.

UNITED STATES of America, Defendant.

v.

Steven F. MEAD, Vernon D. Hysell,
Sandra D. Hysell, and Orange Bank,
Third–Party Defendants.

Vernon D. HYSELL and Sandra D.
Hysell, Third–Party Defen-
dants/Cross–Plaintiffs,

v.

UNITED STATES of America, James P.
Veigle, Charles Veigle, and Orange
Bank, Third–Party Defendants/Cross–
Defendants.

No. 93–713–Civ–Orl–22.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 14, 1994.

Order Denying Reconsideration
or Clarification Nov. 10, 1994.

John Ariko, Jr., pro se.

John L. Graham, Jr., Law Office of John L. Graham, Jr., Orlando, FL, for James P. Veigle, Charles Veigle.

Mary Apostolakos Hervey, U.S. Dept. of Justice, Washington, DC, for U.S.

Harrison Terry Slaughter, Jr., Leventhal & Slaughter, David Richard McFarlin, Wolff, Hill, McFarlin & Herron, P.A., Orlando, FL, for Steven F. Mead.

S. Joseph Piazza, III, S. Joseph Piazza, LL.M, P.A., Orlando, FL, for Vernon Hysell, Sandra Hysell.

Ted Busby Edwards, Smith, MacKinnon, Harris, Greeley, Bowdoin & Edwards, P.A., Orlando, FL, for Amsouth Bank of Fla.

### ORDER

CONWAY, District Judge.

This cause comes before the Court on four motions for summary judgment: (1) Third–Party Defendants Sandra Hysell's and Vernon Hysell's ("Hysells") Motion for Partial Summary Judgment (Dkt. 113); (2) Third–Party Defendant AmSouth Bank of Florida's (formerly known as "Orange Bank") Motion for Summary Judgment (Dkt. 109) and Counter-motion for Summary Judgment (Dkt. 126); and (3) Defendant/Third–Party Plaintiff United States of America's ("United States") Motion for Summary Judgment (Dkt. 100).

### INTRODUCTION

In August of 1991 the Internal Revenue Service began an audit of Labor–Rite, a company operated by Third–Party Defendant Steven Mead ("Mead"). In October of 1991 agents of the Internal Revenue Service met with Mead to discuss Mead's potential tax liability for Labor–Rite's failure to account for employee withholding taxes.

Third–Party Defendant Vernon Hysell is Mead's step-father. Between 1986 and 1991 Mead engaged in business dealings with Vernon Hysell. As a result of these dealings, Mead owed his father thousands of dollars by the winter of 1991.[1] In December, 1991, Vernon Hysell was concerned about the amount of money Mead owed him, and asked Mead to cover his obligations or provide some insurance against the money which his son owed him. Deposition of Vernon Hysell, p. 26–28.

On January 31, 1992 Mead conveyed by quitclaim deed three properties to his mother and step-father, Third–Party Defendant Sandra Hysell and Vernon Hysell. Nothing was given by the Hysells to Steven Mead in exchange for the transfer. Deposition of Steven Mead, p. 51. Neither Vernon Hysell nor Sandra Hysell were present when Mead executed the quitclaim deed. Deposition of Vernon Hysell, p. 64; Deposition of Sandra Hysell, p. 23–24. Mead had these conveyances recorded. Deposition of Steven Mead, p. 52. Mead did not deliver the quitclaim deed to the Hysells, but told the Hysells about the conveyance at a later date.[2]

The three properties which Mead deeded to the Hysells on January 31, 1992 are the subjects of the current litigation. The properties are: (1) an automotive garage at 2046 West Washington Street ("Parcel 1"); (2) a residence located at 11375 Willow Garden Drive ("Parcel 2"); and (3) an office building located at 17 North Summerlin Avenue ("Parcel 3").

After the conveyance to the Hysells in January, 1992, Mead continued to manage the properties. Mead paid the mortgage on

---

1. There is a dispute amongst the parties as to exactly how much Mead owed Vernon Hysell as of the January 1992. The figure is certainly no less than fifty thousand dollars, and Vernon Hysell argues that the figure is in the hundred thousands of dollars.

2. It is unclear how much time transpired between the time of the conveyance and Mead's informing the Hysells of the transfer. *Compare* Deposition of Vernon Hysell, p. 84 (one or two weeks after the conveyance) *with* Deposition of Steven Mead, p. 48, 53 (a couple of months after the conveyance).

the properties and collected the rents from the commercial properties. Deposition of Vernon Hysell, p. 41–42. Mead paid the real estate taxes and the insurance on the properties. Deposition of Vernon Hysell, p. 39, 40, 68. Mead did not pay the Hysells rent for his use of the properties, Deposition of Vernon Hysell, p. 39, and the Hysells did not report any income or deduct on expenses related to these properties in their 1992 or 1993 income tax returns. Deposition of Vernon Hysell, p. 40, 70.

On July 22, 1992, in a three-way transaction closed at Third–Party Defendant Orange Bank, Mead gave the Veigles a quitclaim deed for Parcel 3 purportedly signed by both Sandra and Vernon Hysell.[3] Orange Bank then took a security interest in Parcel 3, and in exchange gave the Veigles a check for approximately $150,000. The Veigles then gave Mead a personal check for approximately $150,000, with the additional understanding that Mead would be entitled to occupy one-half of the commercial space at Parcel 3 rent-free for one year.

On July 23, 1993, the Secretary of the Treasury made an assessment against Mead pursuant to 26 U.S.C. § 6672 for $1,499,-950.50 for liabilities incurred for taxable periods in 1988, 1989, and 1990. On that same date a Notice of Tax Lien was filed against Steven Mead in Orange County. On July 27, 1993, a Notice of Tax Lien was filed in Orange County against the Veigles as nominees of Mead for Parcel 3 and against the Hysells as nominees of Mead for Parcels 1, 2, and 3. The Veigles then instituted a wrongful levy action against the United States in this Court, and the United States joined the remaining parties as Third–Party Defendants in an action to resolve the rights of the all the parties with respect to the three parcels at issue. The Hysells then filed cross-claims and counterclaims against the Veigles, the United States, and Orange Bank in order to establish their rights with respect to the properties.

*ANALYSIS*

Summary judgment is appropriate only when the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P. In making this determination, the Court must view all of the evidence in a light most favorable to the non-moving party. *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988).

*United States' Motion for Summary Judgment*

■ Under 26 U.S.C. § 6151, taxes are legally due and owing and constitute a liability, regardless of when they are assessed, no later than the date the tax return for the particular period is required to be filed. *United States v. Ressler,* 433 F.Supp. 459, 463 (S.D.Fla.1977), *aff'd* 576 F.2d 650 (5th Cir.1978), *cert. denied,* 440 U.S. 929, 99 S.Ct. 1265, 59 L.Ed.2d 485 (1979).

Mead was assessed a tax liability pursuant to 26 U.S.C. § 6672 for failure to collect, account, or pay over taxes past due. The IRS found Mead liable for unpaid unemployment taxes dating back to 1989. These taxes should have been reported on Mead's payroll tax return Form 941, and the payroll taxes were due every quarter. *See* 26 U.S.C. § 6011(a); Treas.Reg. 31.6011(a)–1, 31.6071(a)–1. The Form 941 is required to be filed no later than the end of the month following each quarter. Treas.Reg. 31.6071(a)–1(a)(1).

■ Since the tax liability arises as of the date the tax return for the period is due, Mead became a debtor of the United States in 1989 when the tax liabilities were due to be reported on Mead's Form 941.[4]

---

**3.** There is deposition testimony that Mead represented to the Veigles that he owned Parcel 3. Both Sandra Hysell and Vernon Hysell deny ever signing a quitclaim deed to the Veigles for Parcel 3, authorizing another to sign such a deed on their behalf, or ratifying their signatures on the deed. Deposition of Sandra Hysell, p. 22; Deposition of Vernon Hysell, p. 45.

**4.** Steven Mead has not presented any evidence in this action contesting his tax liability. Thus for the purposes of this motion his tax liability will be presumed.

Under 26 U.S.C. § 6321, a lien in favor of the United States arises upon all of a taxpayer's property and rights to property upon notice and demand for payment of taxes. Where a taxpayer has fraudulently disposed of property prior to the existence of a federal tax lien, the United States may seek relief under the applicable state fraudulent conveyance statute. *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958). Under Florida's fraudulent conveyance statute, a transfer is fraudulent as to present creditors if the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor ..." Fla.Stat.Ann. § 726.105(1)(a) (West 1988).

The Court concludes that Mead's transfer of the three disputed parcels to the Hysells falls within the purview of the Uniform Fraudulent Transfer Act, Fla.Stat.Ann. § 726.101 et seq. Mead is a Florida resident, the transfer involved Florida realty, and the quitclaim deed was signed in the State of Florida. The following excerpts from Mead's deposition are dispositive on the question of Mead's intent:

Q: Can you explain to me how this document [the quitclaim deed from Mead to Sandra and Vernon Hysell of Parcels 1,2, and 3] came to be created, sir?

Mead: I went to my attorney and told him to draw it up.

Q: Under what circumstances did you go to your attorney? Why did you do this?

Mead: The truth because the IRS guy, Bruce Montgomery that came to me to audit me thought that the right amount of Social Security hadn't been taken out of the people's checks cause my accountant had messed it up or whatever."

Deposition of Steven Mead, p. 43.

And further:

Q: You made this transfer [of Parcels 1,2, and 3] to your parents [Sandra and Vernon Hysell]. I'm asking you what did you intend it to be? Did you intend to sell the property to your parents? Did you intend it to pay off

any outstanding loans that you may have owed or was it to act as a lien in the event that you were unable to pay off your loan obligation? Was it a gift? I mean what was this? It had to be something?

Mead: The truth, the real truth, I was probably a little paranoid about the IRS telling me I might owe $1,000,000. I didn't want it all in my name.

Q: Your intent was not to give this property to your parents?

Mead: No, it wasn't to give it to them. . . .

Deposition of Steven Mead, p. 50.

And further:

Q: When you conveyed the three parcels of property to [Sandra and Vernon Hysell] referenced in Government Exhibit 13 [the quitclaim deed], the deed prepared by John Engelhardt, it's your testimony that was conveyed to your step-father and mother in order to protect the property from being seized by the IRS?

Mead: The truth in my eyes when the IRS came, it scared me. I never dealt with the IRS before in my life. I wanted to do anything I could legally to protect anything that I had. I went to my attorneys.

Q: You never intended for Vernon Hysell and your mother to keep it? Actually own that property fee simple?

Mead: Never, ever.

Deposition of Steven Mead, p. 164.

The Court notes that Mead's intent to defraud his creditors through the conveyance of his properties can also be gleaned from other evidence in the record. The Uniform Fraudulent Transfer Act provides that a court, in determining whether a debtor has actually intended to defraud a creditor, may consider a number of listed factors. Fla. Stat.Ann. § 726.105(2). The record reveals that several of these factors are present here. Mead transferred the disputed properties to his parents, who are "insiders" for the purposes of Florida's fraudulent conveyance statute. *See* Fla.Stat.Ann.

§ 726.102(7)(a) (West 1988). Mead retained control of the properties after the conveyance—he collected the rents, paid the taxes and insurance, and occupied the parcels without paying rent. Furthermore, Mead was aware when he transferred the parcels that the IRS was in the process of making an accounting of Mead's tax liability and could be seeking a substantial judgment against him. Deposition of Steven Mead, p. 45.

The record in this case clearly demonstrates that Mead's transfer of his rights in Parcels 1, 2, and 3 by quitclaim deed to the Hysells was fraudulent as to the United States of America. Florida's fraudulent conveyance statute provides that a creditor who seeks relief from a transfer that falls within the fraudulent transfer provisions is entitled to avoid the transfer to the extent necessary to satisfy the creditor's claim. Fla.Stat.Ann. § 726.108(1)(a) (West 1988). Thus Mead's transfer of Parcels 1, 2, and 3 is voidable by the United States.

Notwithstanding the Court's determination that the transfer from Mead to the Hysells of Parcels 1, 2, and 3 are voidable for fraud, unresolved factual and legal issues remain which must be determined at trial, namely:

1) Does Vernon Hysell own a one-half interest in Parcel 1 outright, so that this interest is superior to the lien imposed by the United States?

2) Did the Hysells take Parcels 1, 2, and 3 in good faith and for reasonably equivalent value?

3) If the Hysells did not take Parcels 1, 2, and 3 in good faith and for reasonably equivalent value, what interests, if any, do the Hysells have in Parcels 1, 2, and 3?

4) Did Orange Bank breach a duty of care to the Hysells in engaging in the transaction involving Parcel 3 on July 22, 1992?

5) Does Orange Bank have a lien interest in Parcel 3 superior to the interest of the United States?

Subsidiary issues related to this last question include:

a) Was the exchange involving Parcel 3 from Mead to the Veigles a fraudulent conveyance as to the United States?

b) Should the Court impose a constructive trust as to the conveyance of Parcel 3 from Mead to the Veigles?

c) Were the Veigles and Orange Bank bona fide purchasers of Parcel 3?

d) Were the Veigles and Orange Bank on notice of an intent, if any, on the part of Mead to defraud creditors by transferring Parcel 3 to the Veigles?

Accordingly it is **ORDERED** that the United States' Motion for Summary Judgment (Dkt. 100) is **GRANTED** on the issue of whether Mead's conveyance to Vernon Hysell and Sandra Hysell was a fraudulent conveyance as to the United States, and **DENIED** as to judgment against Third–Party Defendants Vernon Hysell and Sandra Hysell, Third–Party Defendant Steven Mead, and Third–Party Defendant Orange Bank.

It is **FURTHER ORDERED** that Third–Party Defendants Sandra Hysell's and Vernon Hysell's Motion for Partial Summary Judgment (Dkt. 113) is **DENIED.**

It is **FURTHER ORDERED** that Third–Party Defendant Orange Bank's Motion for Summary Judgment (Dkt. 109) is **DENIED.**

It is **FURTHER ORDERED** that Third–Party Defendant Orange Bank's Counter-motion for Summary Judgment (Dkt. 126) is **DENIED.**

DONE AND ORDERED.

### ORDER ON RECONSIDERATION

This cause comes before the Court on Third–Party Defendants Sandra Hysell's and Vernon Hysell's Motion for Reconsideration Or in the Alternative for Clarification of Order. (Dkt. 144).

On October 14, 1994, the Court granted summary judgment for the United States of America on the question of whether Steven Mead's conveyance to the Hysells of Parcels 1, 2, and 3 were fraudulent conveyances under Florida law. The Hysells request the Court to reconsider or clarify this decision. Specifically, the Hysells direct the Court's attention to Fla.Stat.Ann. § 726.106(2), and

**628**

submit that the Court reconsider or explain whether the Court made a finding as to Steven Mead's insolvency or the Hysells' knowledge of such insolvency.

The Court's determination of fraudulent conveyance was not controlled by the provision cited by the Hysells in their motion for reconsideration. As stated in the Court's *order of October 14, 1994*, the Court relied upon Fla.Stat.Ann. § 726.105(1)(a) in reaching its decision. This provision of the Uniform Fraudulent Conveyance Act does not require the Court to make a finding as to Steven Mead's insolvency or the Hysells' knowledge of such insolvency. The Court reserves judgment on these matters until the issue is squarely before the Court.

Accordingly, it is **ORDERED** that Third Party Defendants Sandra Hysell's and Vernon Hysell's Motion for Reconsideration Or in the Alternative for Clarification of Order (Dkt. 144) is DENIED.

DONE AND ORDERED.